UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LILYANN RYAN, as Administrator of the Estate of
BARTHOLOMEW RYAN, deceased and LILLYANN
RYAN, individually

                Plaintiff,

- against -                      12-CV-05343
                                     (JS) (SIL)

COUNTY OF NASSAU, COUNTY OF NASSAU
CORRECTIONAL CENTER, NASSAU COUNTY
SHERIFF'S DEPARTMENT, ARMOR
CORRECTIONAL HEALTH SERVICES, INC.
and ARMOR CORRECTIONAL HEALTH
SERVICES OF NEW YORK, INC.,

                Defendants.
-----------------------------------------------------------------X

## COUNTY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF COUNTY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

                          CARNEL T. FOSKEY
                          Nassau County Attorney

                    By:  James R. Scott
                          Deputy County Attorney
                          Of Counsel
                          Office of the Nassau County Attorney
                          One West Street
                          Mineola, New York 11501
                          (516) 571-0511
                          Attorneys for Defendant
                          County of Nassau, Nassau County
                          Correctional Center and Nassau County
                          Sheriff's Department

# **TABLE OF CONTENTS**

Preliminary Statement ..................................................................................................4

Argument .....................................................................................................................2

I       STANDARD OF REVIEW………………………………………………...2

II.      RESPONSE TO PLAINTIFF'S POINT ONE…………………………………..4

III.     THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
          JUSRIDCTION OVER THE STATE CLAIMS AND SHOULD
          NOT PERMIT THE PLANTIFF TO AMEND THE COMPLAINT…………… 8

CONCLUSION……………………………………………………………………...9

## PRELIMIARY STATEMENT

Defendants, COUNTY OF NASSAU, COUNTY OF NASSAU CORRECTIONAL CENTER, and NASSAU COUNTY SHERIFF'S DEPARTMENT (Hereinafter "County") submit this Reply Memorandum of Law in response to Plaintiff's Memorandum of Law in Opposition to the County Defendants' motion for partial summary judgment ("Pl. Mem").

It is to be first noted that Plaintiff did not submit any opposition to the first argument made in the County's Memorandum of Law: Plaintiff failed to sufficiently plead any constitutional rights violations that create a cause of action under section 1983. Plaintiff did not submit any argument in opposition to the County's contention that the complaint does not contain any factual basis for plaintiff's claims and just contains conclusory statements. Nor did Plaintiff oppose the County's argument that the failure to name the individual employees who allegedly deprived Plaintiff's decedent of his civil rights mandates that the civil rights violations be dismissed. The failure to oppose the County's first argument requires that the Court grant the motion for partial summary judgment and dismiss the civil rights violations.

The Plaintiff also failed to oppose the County's second argument: The County is entitled to qualified immunity because the officials did not violate a statutory or constitutional right that was clearly established at the time of the challenged conduct. As noted in the County's original motion papers, there is a recent Supreme Court decision directly on point: Taylor v. Barkes. 135 S. Ct. 1042 (June, 2015) Taylor is not even listed in Plaintiff's Table of Authorities. In Taylor, the Supreme Court held that there was no clearly established law on the minimum suicide screening procedures that a facility must use to prevent suicides and thus the jail officials were entitled to qualified immunity. In Pl. Mem., Plaintiff does refer to Plaintiff's decedent (Hereinafter "Bart") having a serious medical need and alleges that the defendants failed to

3

properly treat his serious illness. However, the gravamen of the Plaintiff's claim is that the defendants failed to properly diagnose, treat and house Bart by failing to recognize that he was suicidal. Hence, the instant case is identical to Taylor and should likewise be dismissed.

It should also be noted that in his recitation of the facts, Plaintiff offers media accounts of other alleged suicides in the Correctional Center over the years. There was never any evidence adduced in this record about other suicides other than a question directed at the Correction Officers as to whether they had heard of other suicides or participated in saving an inmate who had attempted suicide. There was no reference to the name of any inmate who allegedly committed suicide or any reference to that inmate's medical or psychiatric condition. There was no evidence in the record of this case as to the medical or psychiatric condition of any other inmate who may have tried to harm himself. It would also be inappropriate for the County Attorney to make reference to any inmate who may have harmed himself at the jail without a HIPPA compliant authorization from the inmate or his representative. Plaintiff only included the media accounts in order to prejudice the defendants because of a lack of evidence on his part that the defendants were deliberately indifferent to the needs of Plaintiff's decedent.

Plaintiff also brings into the record all of Bart's medical records from the VA Hospital where he treated over the years. Clearly, the County employees had no access to the records and as non-medical employees they would not understand what they were reading. If the personnel at the VA Hospital believed that Bart was suicidal they would not have discharged him on numerous occasions to go home where he could harm himself. The officers who admitted and supervised Bart could only go on what Bart told them about himself and what they observed about his conduct and behavior.

## STANDARD OF REVIEW

4

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See* Hurninski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). District Judge Bianco succinctly set for the standard for review on a motion for summary judgment in Crews v. County of Nassau et al, in stating:

> Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31,33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.' *BellSouth Telecomrns., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d

5

**at 33).**

In the instant case, as concerns Nassau County, Plaintiff has not demonstrated that there are any material issues of fact to be resolved by a trial and has merely offered conclusory allegations in an attempt to create issues of fact so as to defeat the motion for summary judgment. In his final paragraphs in point c (P. 19), Plaintiff points to facts that are not in this record to "prove" that Armor tried to save money by not proscribing the proper medication for Bart and that Dr. Manetti refused to put Bart on suicide watch in some effort to cover up his deliberate failure to prescribe medication. This circular reasoning is the definition of conclusory allegations and not supported by any evidence in the record of the instant case.

## RESPONSE TO PLAINTIFF'S POINT ONE

In his first point, Plaintiff recites the law on his civil rights claims and then refers to prior cases that Armor was involved in to buttress his claim that the defendants were deliberately indifferent to Bart's medical needs. As for the County, Plaintiff claims that the County has no suicide prevention policy to prevent suicides in the correctional center. Plaintiff then provides an affidavit from his expert that presupposes that Bart was suicidal and that Bart was being housed in the wrong type of housing. It is to be noted that this expert is not a medical doctor or psychiatrist and is not qualified to render an opinion on Bart's suicide risk. Nor does the expert state on what basis he found Bart to be suicidal. He merely states that Bart was suicidal, another conclusory allegation without a basis in the record of this case. The expert then refers to the County's Inmate Admission Process SOP reproduced as Exhibit "P" in the County's motion papers. A close look at the SOP and what the Correction personnel actually did with Bart will demonstrate that there was a policy about suicide prevention and that the jail personnel followed that policy.

Section III (G) of the SOP directs that inmates who have failed suicide screening shall be seen by a Mental Health Professional as soon as practicable after the booking process has been completed and shall be under constant supervision until he has been escorted from the inmate booking center. This was done in the instant case. Bart was under constant supervision in the booking area until he was sent to Armor nurse Joe Matthews to begin his medical/mental health evaluation. Thus, while Bart was in the booking unit he was under constant supervision. Bart was seen by nurse Matthews, who performed his own suicide screening exam, and then escorted to nurse Tinglin, who performed her own suicide screening exam. (See Par. 7 and 8 of County 56.1) In accordance with the above SOP the County followed the recommendation of the Armor employees and housed Bart in a mental observation tier.

Next Plaintiff's expert opined that being suicidal inmates, like Bart "...should be placed in general population, a congregate mental health unit or medical infirmary with high levels of staff observation." (See Plaintiff's Exhibit K paragraph 17) The SOP for the Building Bart was housed in was reproduced as Exhibit "**AA**". As stated in the definitions section on page 2 of the exhibit, the supervisory visits for general population are every 30 minutes. Section IV (b) (4) of e same exhibit provides two levels of supervision for inmates in the mental observation tier. One correction officer conducts a tour of the mental observation tier every fifteen minutes and a second officer stays on the mental observation tier all the time constantly patrolling and punching the punch station every fifteen minutes. <u>Incredibly,</u> Plaintiff's expert states that a good and accepted practice is to place a suicidal inmate in general population where there are only single inmate cells and a correction officer will look at him every 30 minutes. Whereas, the County mandates that a suicidal inmate must be under constant observation by a correction

7

officer so he is never left alone. The County provided more supervision for Bart than was recommended by Plaintiff's expert and they did not classify him as a suicide risk.

As for the expert's third choice of an infirmary, that is a decision to be made by a mental health professional not the jail personnel and in this case Armor employees did not recommend it. In fact, Dr. Manetti recommended that Bart be housed in the Plaintiff's expert first choice: general population.

Next, the Plaintiff mischaracterizes the testimony of the Correction Officers who testified and alleges that they were not properly trained on how to supervise and deal with the inmates on the tiers. Again, Plaintiff labels Bart as suicidal and asserts that Kileen did not know that Bart was suicidal so he could be watched for signs of suicidal behavior. Bart was not diagnosed as being suicidal after he saw the Armor personnel. All of the Officers who testified knew that if an inmate was suicidal he was placed under constant supervision until he could be seen by Mental Health. Kileen properly described his responsibility on the mental observation tier as staying on the tier, walking back and forth on the tier and punching the clock every fifteen minutes. (Par 51 of County 56.1) Kileen described his suicide prevention training in the academy and described how he walked the tier looking for signs of depression or change in behavior of the inmates. (Par 53 of County 56.1) Kileen looked for irrational behavior and/or crying by the inmates. (Par 51 of County 56.1) Kileen saw Bart four times before the suicide and nothing stood out about Bart. (Par 51 of County 56.1) Kileen also described how a suicidal inmate is stripped of his clothes, placed in a suicide prevention suit and is put on a one-on-one watch. (Par 55 of County 56.1)

CO Brown likewise described his suicide prevention classes and the in-service update sessions he undertook over the years. (Par. 57 of County 56.1) Brown also properly outlined the duties of the two Officers who patrolled the Mental Observation Tier. (Par. 57 of County 56.1)

8

Brown gave answers similar to Kileen about how he patrolled the tier, what he looked for from the inmates and how a suicidal inmate is dealt with in terms of the constant observation. (Par. 57 of County 56.1)

CO Graba also provided the same answers on the questions of how the tier was supervised and what he looks for in walking the tier. (Par. 58 of County 56.1) Graba also stated that if he saw a change in an inmate, he would notify mental health. (Par. 58 of County 56.1) In particular, Graba was shown the operational procedure manual for the housing unit (Exhibit "**AA**" in Scott declaration) and described how it was taught to him at the academy as part of his training (Par. 59 of County 56.1) Graba also described the annual three day update training that includes issues of mental health of the inmates. (Par. 59 of County 56.1) Finally, Graba was shown the procedure manual in Exhibit "**Z**" of the Scott declaration and correctly described the terms of active supervision and general supervision (Par. 57 of County 56.1).

CO Vogt was asked the same question as the other Officers and gave similar answers as the other Officers. (Par. 63 of County 56.1) Vogt was the Officer who let Bart out of his cell to see Dr. Manetti, saw him every fifteen minutes as he did his tour and did not notice anything different or out of the ordinary. (Par. 63 of County 56.1) Vogt continued his rounds, seeing Bart every fifteen minutes and noting that Bart was not in any distress. (Par. 63 of County 56.1)

It is respectfully submitted that there is no question of fact as to the jail's suicide prevention policy, the level of supervision provided to Bart or that any Correction Officer was confused or not properly trained in how to do his job and supervise the inmates, particularly Bart. It is clear that Bart was given a higher level of supervision than even the Plaintiff's expert deemed necessary. After failing the suicide screening, Bart was given the one-on-one constant supervision the jail's SOP required until he was cleared by Armor personnel. Bart was seen by

9

three Armor employees who did not find that Bart was suicidal. If a trained psychiatrist with many years of experience in dealing with the mental health issues of inmates did not find Bart to be suicidal, how would a Correction Officer be able find that Bart was at risk and overrule that doctor and put Bart on constant observation? This is especially so when the psychiatrist saw Bart within hours of his suicide. There are no questions of fact for a jury to decide and the Court should grant the County summary judgment dismissing the civil rights claims against the County.

## THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JUSRIDCTION OVER THE STATE CLAIMS AND SHOULD NOT PERMIT THE PLANTIFF TO AMEND THE COMPLAINT

Contrary to the Plaintiff's assertions that discovery is virtually complete, discovery is complete and has been complete since the end of disclosure on November 7, 2014. Since that date the only issues before the Court dealt with the motion practice and briefing schedules. There was one appearance before this Court when the case was called for a pre-motion conference to seek permission to make the within motions for summary judgment. If this Court grants the motions for summary judgment, there is no reason to burden this busy Court with state claims that can be addressed just as well in New York Supreme Court. This case should have been brought in New York and should be returned to the New York courts upon dismissal of the Federal clams.

Finally, the Court should not permit the Plaintiff to amend the complaint. If this Court finds the complaint is defective for the reasons stated herein, the Court will not be denying the Plaintiff her day in Court on the State claims, just merely dismissing the Federal claims which

she cannot sustain in any event. The Plaintiff will have a remedy if she can prove her State claims in State Court.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the civil rights claims set forth in the third cause of action in the complaint, decline to exercise supplemental jurisdiction over the State Claims against the County and deny Plaintiff's request to amend the Complaint

Dated: Mineola, New York
      December 4, 2015

                                  CARNELL T. FOSKEY
                                  Nassau County Attorney

By:

                                  James R. Scott (5818)
                                  Deputy County Attorney
                                  Office of the Nassau County Attorney
                                  Attorneys for Defendant
                                  One West Street
                                  Mineola, New York 11501
                                  (516) 571-0511