# TABLE OF CONTENTS

**EXHIBIT –**

A. Inmate Admission Information dated 2/23/12

B. Blank Suicide Prevention Screening guidelines 2 pages

C. Ryan Suicide Screening Form dated 2/23/12

D. Correctional Center Policy and Procedure for Inmate Admission Process

E. Suicide Prevention and Crisis Intervention in County Jails and Police Lockups

F. Armor Medical Records for Ryan

G. Armor Medical Records Marked at deposition of Dr. Manetti

H. Photograph of jail cells as B-2-A tier at Nassau County Correction Center

I. Photograph of jail cells as B-2-A tier Nassau County Correction Center

J. Photograph of cell 2 as B-2-A tier

K. Personnel Log for Key Station for B-2-A tier

L. NCCC Patrol log book for A and B Blocks

M. Patrol Log Book for lobby area all tiers

N. Patrol log book for A and B block

O. Post Order for B Building 2nd floor

3020250 NASSAU COUNTY SHERIFF'S DEPARTMENT 02/23/12 14:46
DIVISION OF CORRECTION PAGE 1

** INMATE ADMISSION INFORMATION **

NAME: RYAN BARTHOLOMEW ICN: 12020331
LOC: B2 A02 A CL: AM DDM MAXA MH RACE: W DOB: [redacted] AGE: 32 NCC: 12001794

ADDRESS: 1869 WHITE ST CITY: BELLMORE STATE: NY ZIP: 11710
BTHPL: NY MAR: S REL: NON OCC: MECHANIC SS: [redacted] YRS ED: 14
LITERATE: Y HISPANIC: N VETERAN: Y

ADMITTED: 02/23/12 14:23 BOOKED BY: ARCHER USERID: 03455
FROM: DCH TRANSPORT BY: MARTIN SHIELD: 02294 DEPT: NCS

RETURN ORDER: N PHONE CALL: Y PROPERTY: Y CASH: .00
ATTORNEY: U U LEGAL AID: U RECEIPT NO:

ESCAPE RISK : U SUICIDE RISK : Y PHYSICAL CONDITION : F
ANY KNOWN INJURY : N ALCOHOL : N DRUGS : N
MEDICATION : Y MENTAL HANDICAP : N MEDICAL HANDICAP : N

REMARKS: HTH 02/23/12 I/M FAILD SUICIDE SCREENING CO RYAN NOTIFIED
HTH 02/23/12 INS-NO
HTH 02/23/12 NO VISBLE INJURIES

NOTIFY: LILLIN RELATION: MOTHER
ADDRESS: SAME CITY: STATE: ZIP:
HOME PHONE: 516-356-1325 BUSINESS PHONE: - -

NCJ: NCPD: NYSIIS: 0241270K FBI: 989383WC2 A#:

COMPLEXION: FAR HAIR: BLK EYES: HAZ BUILD: M HEIGHT: 5FT 11IN WEIGHT: 200
REMARKS: NCMC:

ALIAS: BARTHOLOMEW RYAN J

DKT: 23455/10 DCH 08 02/23/12 IND:
STAT: AWOC 02/23/12 REL: CTL: Y YO:
VTL UMIS 119.20.04 0 001 OP INF DR' $10,000.00 BOND $5,000.00 BAIL
OI 118.00.0B 0 001 MAX SPEED VI

NEXT APPEARANCE: 03/09/12 DCH 08 CONF ENGEL

**END OF REPORT**

Form 330 ADM (CC) (4/01)

State of New York
COMMISSION OF CORRECTION
Office of Mental Health

B, C, E

# SUICIDE PREVENTION SCREENING GUIDELINES

| DETAINEE'S NAME | SEX | DATE OF BIRTH | MOST SERIOUS CHARGE(S) | | DATE | TIME |
|---|---|---|---|---|---|---|
| NAME OF FACILITY | | NAME OF SCREENING OFFICER | | Detainee showed serious psychiatric problems during prior incarceration   YES _____ NO _____ | | |

*Check appropriate column for each question*

| | Column A YES | Column B NO | General Comments/Observations All "YES" Responses Require Note to Document |
|---|---|---|---|
| **OBSERVATIONS OF ARRESTING/TRANSPORTING OFFICER** | | | |
| 1. Arresting or transporting officer believes that detainee may be a suicide risk. If YES, notify supervisor. | ░░ | | |
| **PERSONAL DATA** | | | |
| 2. Detainee lacks support of family or friends in the community. | No Family Friends | | |
| 3. Detainee has experienced a significant loss within the last six months (e.g., loss of job, loss of relationship, death of close family member). | | | |
| 4. Detainee is very worried about major problems other than legal situation (e.g., serious financial or family problems, a medical condition or fear of losing job). | | | |
| 5. Detainee's family member or significant other (spouse, parent, close friend, lover) has attempted or committed suicide. | | | |
| 6. Detainee has history of drug or alcohol abuse. (Note drug and when last used.) | | | |
| 7. Detainee has history of counseling or mental health evaluation/treatment. (Note current psychotropic medications and name of most recent treatment agency.) | | | |
| 8. Detainee expresses extreme embarrassment, shame, or feelings of humiliation as result of charge/incarceration (consider detainee's position in community and shocking nature of crime). If YES, notify supervisor. | ░░ | | |
| 9. Detainee is thinking about killing himself. If YES, notify supervisor. | ░░ | | |
| 10a. Detainee has previous suicide attempt. (Explore method and check for scars.) | | | |
| b. Attempt occurred within last month. If YES, notify supervisor. | ░░ | | |
| 11. Detainee is expressing feelings of hopelessness (nothing to look forward to). If YES, notify supervisor. | ░░ | | |
| 12. This is detainee's first incarceration in lockup/jail. | | | |
| **BEHAVIOR/APPEARANCE** | | | |
| 13. Detainee shows signs of depression (e.g., crying, emotional flatness). | | | |
| 14. Detainee appears overly anxious, panicked, afraid or angry. | | | |
| 15. Detainee is acting and/or talking in a strange manner (e.g., cannot focus attention; hearing or seeing things which are not there). | | | |
| 16a. Detainee is apparently under the influence of alcohol or drugs. | | | |
| b. If YES, is detainee incoherent, or showing signs of withdrawal or mental illness? If YES to both a & b, notify supervisor. | ░░ | | |

TOTAL Column A _____

Officer's Comments/Impressions

**ACTION**

If total checks in Column A are 8 or more, or any shaded box is checked, or if you feel it is necessary, notify supervisor and institute constant watch.

Supervisor Notified:      YES _____      NO _____

Constant Supervision Instituted:      YES _____      NO _____

Detainee Referred to Medical/Mental Health:      If YES:
YES _____   NO _____

EMERGENCY
medical _____
mental health _____

NON-EMERGENCY
medical _____
mental health _____

Signature and Badge Number of Screening Officer: _____

Medical/Mental Health Personnel Actions: (To be completed by medical/MH staff)

DEFENDANT'S EXHIBIT B

State of New York
COMMISSION OF CORRECTION
Office of Mental Health

# INSTRUCTIONS FOR COMPLETING SUICIDE PREVENTION SCREENING GUIDELINES – FORM 330 ADM

## GENERAL INFORMATION

It is recommended that the form be completed in triplicate for all detainees prior to cell assignment and be distributed as follows: top copy in detainee's file, second copy to medical or mental health personnel at referral, and the third copy for use according to facility's procedures.

Comment Column: All "YES" responses require note to document:
1. information about the detainee that officer feels is relevant and important;
2. information specifically requested in questions;
3. information regarding detainee's refusal or inability to answer questions.

Detainee's Name: Enter detainee's first and last name and middle initial.
Sex: Enter male (m) or female (f).
Date of Birth: Enter month, day and year.
Most Serious Charge(s): Enter the most serious charge or charges (no more than two [2]) from this arrest.
Date: Enter month, day and year form was completed.
Time: Enter the time of day the form was completed.
Name of Facility: Enter name of jail or lock-up.
Name of Screening Officer: Print name of officer completing form.
Psychiatric Problems During Prior Incarceration: The screening officer should check facility files to determine if the inmate had attempted suicide or was referred for mental health services during prior incarceration. NOTE: **Persons with a diagnosis of schizophrenia or major depression should be referred immediately to mental health as they are generally more at risk for suicide than persons with other psychiatric disorders.**

## INSTRUCTIONS FOR ITEMS 1–16

### General Instructions

Check the appropriate YES or NO for items 1–16.

If information required to complete these questions is unknown to screening officer, such information should be obtained by asking detainee to answer questions. However, detainee has the right to refuse to answer.

If detainee refuses to answer questions 2–12, enter RTA (refused to answer) in the Comment Column next to each question. In addition, complete the YES or NO boxes only if information is known to you.

If during an otherwise cooperative interview, detainee refuses to answer one or two question: Check YES in the box(es) next to the unanswered question(s) and enter RTA in the comment box next to each unanswered question.

If detainee is unable to answer all questions 2–12, enter UTA (unable to answer) in the Comment Column next to each question. Also enter reason (e.g., not English speaking) for not answering these questions in the Comment Column next to Question 2. In addition, complete the YES or NO boxes only if information is known to you.

### Observation of Transporting Officer

ITEM (1) Check YES or NO based upon the written/verbal report of the arresting/transporting officer or upon the screening form completed by the arresting agency. If YES, notify supervisor.

**NOTE: The following questions and observations should not be read word for word but restated in your own words.**

### Personal Data Questions

ITEM (2) Family/friends: Check NO if someone other than a lawyer or bondsman would (1) be willing to post detainee's bail, (2) visit detainee while he/she is incarcerated, or (3) accept a collect call from detainee.

ITEM (3) Significant loss: Ask all three components to this question—loss of job, loss of relationship and death of close friend or family member.

ITEM (4) Worried about problems: Ask about such problems as financial, medical condition or fear of losing job. Check YES if detainee answers YES to any of these.

ITEM (5) Family/significant other attempted suicide: Significant other is defined as someone who has an important emotional relationship with detainee.

ITEM (6) Alcohol or drug history: Check YES if detainee has had prior treatment for alcohol/drug abuse or if prior arrests were alcohol/drug related.

ITEM (7) History of counseling or mental health evaluation/treatment: Check YES if detainee (1) has ever had psychiatric hospitalization, (2) is currently on psychotropic medication, or (3) has been in outpatient psychotherapy during past six months. Note current psychotropic medication and name of most recent treatment agency.

ITEM (8) Check YES if detainee expresses extreme shame as result of arrest or feels that arrest/detention will cause humiliation to self/significant others. If YES, notify supervisor.

ITEM (9) Suicidal: Check YES if detainee makes suicidal statement or responds YES to direct question, "Are you thinking about killing yourself?" If YES, notify supervisor.

ITEM (10a&b) Previous attempt: Check YES if detainee states he has attempted suicide. If YES or NO, explore method and note scars. Obtain as much information as possible re method and time of attempt. If YES to 10b, notify supervisor.

ITEM (11) Hopeless: Check YES if detainee states feeling hopeless, that he has given up, that he feels helpless to make his life better. If YES, notify supervisor.

ITEM (12) Criminal History: Ask detainee or check files to determine if this is detainee's first incarceration.

### Behavior/Appearance Observations

YES or NO must always be checked for each of these items. They are observations made by the screening officer. They are not questions.

ITEM (13) Depression: Indicators include behavior such as crying, emotional flatness, apathy, lethargy, extreme sadness, unusually slow reactions.

ITEM (14) Overly anxious, afraid, panicked, or angry: Indicators include behavior such as handwringing, pacing, excessive fidgeting, profuse sweating, cursing, physical violence, etc.

ITEM (15) Acting in strange manner: Check YES if you observe unusual behavior or speech such as hallucinations, severe mood swings, disorientation, withdrawal, etc. If detainee is hearing voices telling him to harm himself, make an immediate referral to mental health services.

ITEM (16a) Under influence: Check YES if detainee is apparently intoxicated on drugs or alcohol.

ITEM (16b) Incoherence, withdrawal, or mental illness: Means physical withdrawal from substance. If YES to both a & b, notify supervisor.

**COMMENTS/IMPRESSIONS: Note any "gut" feelings or general impression re suicide risk.**

## SCORING

Count all checks in Column A. Enter total. Notify supervisor if (1) total is 8 or more, (2) any shaded area is checked, (3) if you feel notification is appropriate.

## BOOKING OFFICER SIGNATURE AND BADGE NUMBER

Sign form and enter badge number.

## DISPOSITION

Corrections Personnel: Supervisor notified: check YES or NO. Notification should be made prior to cell assignment. Note if constant supervision instituted. Note emergency/non-emergency referral to medical and/or mental health personnel.

Medical/Mental Health Personnel: Medical/mental health staff should note recommendations and actions taken.

** SUICIDE PREVENTION SCREENING **

AME: RYAN BARTHOLOMEW TCN: 12020831
OC: B2 A02 A CL: AM DDM MAXA MH RACE: W DOB: [redacted] AGE: 32 NCC: 12001794
REENING OFFICER: ARCHER FAILED A SUICIDE SCREENING

| | | RESPONSE |
|---|---|---|
| I | OBSERVATIONS OF ARRESTING/TRANSPORTING OFFICER | |
| 1A | OFFICER BELIEVES THAT DETAINEE MAY BE A SUICIDE RISK? IF YES, NOTIFY SHIFT COMMANDER. * | N |
| II | PERSONAL DATA | |
| 1B | DETAINEE UNABLE TO ANSWER QUESTIONS 2-11? (INTOXICATED, NOT ENGLISH SPEAKING) | N |
| 2 | LACKS CLOSE FAMILY OR FRIENDS IN THE COMMUNITY? | N |
| 3 | HAS EXPERIENCED A SIGNIFICANT LOSS WITHIN THE LAST SIX MONTHS (LOSS OF JOB, RELATIONSHIP, DEATH OF CLOSE FAMILY MEMBER)? | N |
| 4 | VERY WORRIED ABOUT MAJOR PROBLEMS OTHER THAN LEGAL SITUATION (SERIOUS FINANCIAL OR FAMILY PROBLEMS, OR MEDICAL CONDITION, OR LOSS OF JOB)? | N |
| 5 | FAMILY OR SIGNIFICANT OTHER (SPOUSE, PARENT, CLOSE FRIEND, LOVER) HAS ATTEMPTED OR COMMITTED SUICIDE? | N |
| 6 | HAS PSYCHIATRIC HISTORY? (NOTE CURRENT PSYCHOTROPIC MEDICATIONS, AND NAME OF MOST RECENT TREATMENT AGENCY) | Y |
| 7 | HAS HISTORY OF DRUG OR ALCOHOL ABUSE? | N |
| 8 | HOLDS POSITION OF RESPECT IN COMMUNITY AND/OR ALLEGED CRIME IS SHOCKING IN NATURE? IF YES, NOTIFY SHIFT COMMANDER. * | N |
| 9 | THINKING ABOUT KILLING HIM/HERSELF? IF YES NOTIFY, SHIFT COMMANDER. * | N |
| 10A | DETAINEE HAS PREVIOUS SUICIDE ATTEMPT (EXPLORE METHOD AND CHECK FOR SCARS.) | N |
| 10B | ATTEMPT OCCURRED WITHIN LAST MONTH. IF YES, NOTIFY SHIFT COMMANDER. * | N |
| 11 | FEELS THAT THERE IS NOTHING TO LOOK FORWARD TO IN THE FUTURE (EXPRESSES FEELINGS OF HELPLESSNESS OR HOPELESSNESS)? IF YES, NOTIFY SHIFT COMMANDER.. * | N |
| III | BEHAVIOR/APPEARANCE | |
| 12 | SHOWS SIGNS OF DEPRESSION (CRYING, EMOTIONAL FLATNESS)? | N |
| 13 | APPEARS OVERLY ANXIOUS, AFRAID OR ANGRY? | N |
| 14 | APPEARS TO FEEL UNUSUALLY EMBARRASSED OR ASHAMED? | N |
| 15 | IS ACTING AND/OR TALKING IN A STRANGE MANNER (CANNOT FOCUS ATTENTION, HEARING OR SEEING THINGS WHICH ARE NOT THERE)? | N |
| 16A | IS APPARENTLY UNDER THE INFLUENCE OF ALCOHOL OR DRUGS? * | N |
| 16B | IF YES, IS DETAINEE INCOHERENT, OR SHOWING SIGNS OF WITHDRAWAL OR MENTAL ILLNESS? IF YES TO BOTH A AND B, NOTIFY SHIFT COMMANDER. * | N |

DEFENDANT'S EXHIBIT C PENGAD 800-631-6989

AME: RYAN HOEDMEW ... CN: 12020331
OC: 82 A02 A CL: AM DDM MAXA MH RACE: W DOB: [redacted] AGE: 32 NCC: 12001794
RLENING OFFICER ARCHER FAILED A SUICIDE SCREENING

IV CRIMINAL HISTORY RESPONSE

| | | RESPONSE |
|---|---|---|
| 7A | NO PRIOR ARRESTS? (IF ANSWER IS YES, THERE WERE NONE.) | N |
| 7B | HAS DETAINEE SHOWED SERIOUS PSYCHIATRIC PROBLEMS DURING PRIOR INCARCERATION? | U |

** TOTAL QUESTIONS ANSWERED "YES" (EXCLUDING 17B) ** : 1

V ACTIONS

IF TOTAL NUMBER OF QUESTIONS ANSWERED "YES" IS 8 OR MORE,
******** NOTIFY SHIFT COMMANDER ********

SHIFT COMMANDER NOTIFIED? *

SUPERVISION INSTITUTED: ROUTINE ACTIVE CONSTANT

DETAINEE REFERRED TO MEDICAL/MENTAL HEALTH? Y
EMERGENCY: MEDICAL MENTAL HEALTH
NON-EMERGENCY: MEDICAL MENTAL HEALTH X

COMMENTS TO QUESTIONS:

| IME | QUES | COMMENT |
|---|---|---|
| 445 | 06 | I/M CLAIMS TO TAKE MEDS FOR PSYCH PROBLEMS |
| 445 | 06 | CONSTANT OBS PENDING MENTAL HEALTH |

* NOTIFICATION SHALL BE MADE TO MEDICAL UNIT DURING HOURS OF OPERATION.

| Location | Time | Date |
|---|---|---|
| B2-Cr14 | 11:44:52 | 02/24/2012 |
| B2-B-ALT-R308 | 11:46:42 | 02/24/2012 |
| B2-A-r19 | 11:46:46 | 02/24/2012 |
| B2-A-r19 | 11:59:48 | 02/24/2012 |
| B2-B-ALT-R308 | 11:59:50 | 02/24/2012 |
| B2-Cr14 | 12:01:16 | 02/24/2012 |
| B2-D-R307 | 12:01:18 | 02/24/2012 |
| B2-A-r19 | 12:14:48 | 02/24/2012 |
| B2-B-ALT-R308 | 12:14:52 | 02/24/2012 |
| B2-Cr14 | 12:16:50 | 02/24/2012 |
| B2-D-R307 | 12:16:54 | 02/24/2012 |
| B2-Cr14 | 12:20:16 | 02/24/2012 |
| B2-D-R307 | 12:20:20 | 02/24/2012 |
| B2-A-r19 | 12:29:58 | 02/24/2012 |
| B2-B-ALT-R308 | 12:30:02 | 02/24/2012 |
| B2-Cr14 | 12:31:36 | 02/24/2012 |
| B2-D-R307 | 12:31:40 | 02/24/2012 |
| B2-A-r19 | 12:45:48 | 02/24/2012 |
| B2-B-ALT-R308 | 12:45:52 | 02/24/2012 |
| B2-Cr14 | 12:47:34 | 02/24/2012 |
| B2-D-R307 | 12:47:38 | 02/24/2012 |
| B2-A-r19 | 13:02:44 | 02/24/2012 |
| B2-B-ALT-R308 | 13:02:48 | 02/24/2012 |
| B2-Cr14 | 13:04:20 | 02/24/2012 |
| B2-D-R307 | 13:04:22 | 02/24/2012 |
| B2-A-r19 | 13:16:42 | 02/24/2012 |
| B2-A-r19 | 13:16:44 | 02/24/2012 |
| B2-B-ALT-R308 | 13:16:48 | 02/24/2012 |
| B2-Cr14 | 13:18:32 | 02/24/2012 |
| B2-D-R307 | 13:18:34 | 02/24/2012 |
| B2-A-r19 | 13:30:56 | 02/24/2012 |
| B2-B-ALT-R308 | 13:31:00 | 02/24/2012 |
| B2-Cr14 | 13:32:34 | 02/24/2012 |
| B2-D-R307 | 13:32:38 | 02/24/2012 |
| B2-A-r19 | 13:46:18 | 02/24/2012 |
| B2-A-r19 | 13:46:20 | 02/24/2012 |
| B2-B-ALT-R308 | 13:46:26 | 02/24/2012 |
| B2-Cr14 | 13:48:00 | 02/24/2012 |
| B2-D-R307 | 13:48:04 | 02/24/2012 |
| B2-D-R307 | 13:57:48 | 02/24/2012 |
| B2-Cr14 | 13:57:52 | 02/24/2012 |
| B2-B-ALT-R308 | 13:59:54 | 02/24/2012 |
| B2-A-r19 | 13:59:58 | 02/24/2012 |
| B2-A-r19 | 14:14:12 | 02/24/2012 |
| B2-B-ALT-R308 | 14:14:16 | 02/24/2012 |
| B2-Cr14 | 14:15:36 | 02/24/2012 |
| B2-D-R307 | 14:15:40 | 02/24/2012 |
| B2-D-R307 | 14:29:00 | 02/24/2012 |
| B2-D-R307 | 14:29:02 | 02/24/2012 |
| B2-Cr14 | 14:29:06 | 02/24/2012 |
| B2-B-ALT-R308 | 14:30:16 | 02/24/2012 |
| B2-A-r19 | 14:30:20 | 02/24/2012 |
| B2-A-r19 | 14:30:22 | 02/24/2012 |
| B2-A-r19 | 14:44:00 | 02/24/2012 |
| B2-B-ALT-R308 | 14:44:04 | 02/24/2012 |
| B2-B-ALT-R308 | 14:44:06 | 02/24/2012 |
| B2-B-ALT-R308 | 14:44:08 | 02/24/2012 |
| B2-Cr14 | 14:45:42 | 02/24/2012 |
| B2-Cr14 | 14:45:44 | 02/24/2012 |
| B2-D-R307 | 14:45:46 | 02/24/2012 |
| B2-D-R307 | 14:58:56 | 02/24/2012 |
| B2-Cr14 | 14:59:00 | 02/24/2012 |
| B2-B-ALT-R308 | 15:00:08 | 02/24/2012 |
| B2-A-r19 | 15:00:12 | 02/24/2012 |
| B2-A-r19 | 15:15:50 | 02/24/2012 |
| B2-A-r19 | 15:15:52 | 02/24/2012 |
| B2-B-ALT-R308 | 15:15:56 | 02/24/2012 |
| B2-B-ALT-R308 | 15:15:58 | 02/24/2012 |
| B2-Cr14 | 15:17:04 | 02/24/2012 |
| B2-Cr14 | 15:17:06 | 02/24/2012 |
| B2-Cr14 | 15:17:08 | 02/24/2012 |
| B2-D-R307 | 15:17:12 | 02/24/2012 |
| B2-D-R307 | 15:25:22 | 02/24/2012 |
| B2-D-R307 | 15:25:24 | 02/24/2012 |
| B2-Cr14 | 15:25:28 | 02/24/2012 |
| B2-Cr14 | 15:25:30 | 02/24/2012 |
| B2-B-ALT-R308 | 15:26:46 | 02/24/2012 |
| B2-B-ALT-R308 | 15:26:48 | 02/24/2012 |
| B2-A-r19 | 15:26:52 | |
| B2-A-r19 | 15:41:50 | |

DEFENDANT'S EXHIBIT

PENGAD 800-631-6989

0630 - PATROL SUSPENDED DUE TO FEEDING
0643-45 PATROL A+B APPEARS SECURE
0658-0700 PATROL A+B APPEARS SECURE
0710 (1) I/M FROM A BLOCK (4) I/M'S FROM B BL
TO COUNT NEW COUNT A 4+1 = (5) / B 13+4
0713-15 PATROL A+B APPEARS SECURE
0728-30 PATROL A+B APPEARS SECURE
0740 TURN OVER COUNT A-4+1 = (5) / B-13+4 = (17)
0743-45 Patrol A+B — I/m's Quiet —

1. Date: -24-12
2. Housing Unit/Post: 3d A+B
3. Tour of Duty: 0700 1600
4. Staff Member Assigned: c/o York 2941
5. No. of Keys: (5) + (1) cuffs
6. Body Alarm: #1822
7. Previous Tour Entries Reviewed and Security Inspection Performed: c/o York 2941 (Signature)

0758-00 Patrol A+B — I/m's Quiet —
0813-15 Patrol A+B — Appears Secure —
0828-30 Patrol A+B — Appears Secure —
0843-45 Patrol A+B — I/m's Quiet —
0858-00 Patrol A+B — Appears Secure —
0913-15 Patrol A+B — Showers in Use —
0928-30 Patrol A+B — Showers in Use —
0943-45 Patrol A+B - I/m [redacted] A-11 was observed attemp
remove the A block television from its mount. I/m
after several verbal command Lock in # B0743 submit
0958-00 Patrol A+B — Appears Secure —
1013-15 Patrol A+B — Phones in Use —
1028-30 Patrol A+B — I/m's Locked In —
1043-45 Patrol A+B - Count A-(4)+1 B-(13)+4
1058-00 Patrol A+B — Feeding Prep —
1115 Patrol suspended due to feeding. Office cyn pune

DEFENDANT'S EXHIBIT L



1128-33 Patrol A+B — Feeding/clean up complete — c/o [redacted]
1143-45 Patrol A+B — Appears Secure — c/o [redacted]
1158-00 Patrol A+B — I/m's talking in cells — c/o [redacted]
1213-15 Patrol A+B — I/m's laying on bunks — c/o [redacted]
1228-33 Patrol A+B — I/m's Quiet — c/o [redacted]
1243-45 Patrol A+B — I/m's Quiet — c/o [redacted]
1258-00 Patrol A+B — Phones in Use — c/o [redacted]
1313-15 Patrol A+B — Shower in Use — c/o [redacted]
1328-30 Patrol A+B — I/m's Talking — c/o [redacted]
1343-45 Patrol A+B — Appears Secure — c/o [redacted]
1351 ① return to B block from court New Count: A-(4) B-(14) c/o [redacted]
1358-00 Patrol A+B — I/m's Watching T.V. — c/o [redacted]
1413-15 Patrol A+B — Appears Secure — c/o [redacted]
1428-30 Patrol A+B — I/m's Locked In — c/o [redacted]
1445 Supervisory Headcount A-(4)+1 OT = (5) B-(14)+(3) OT = (17) CPL [redacted]
1500-05 During routine patrol Inmate Ryan 32 A02 found hanging in his cell by myself and c/o Killeen. Cpl Sullivan and c/o Vogt 2842 immediately notified. c/o Vogt 2841
1510 C/O M. Vogt, C/O Ross & C/O Mohaman who responded to Medical Emergency Alarm at 1502 hours administered CPR - Rescue Breathing and AED use since I/m Ryan found hanging.
At 1510 hrs C/O M. Vogt, C/O Ross & C/O Mohaman took I/m Ryan via stretcher to D-Med along with medical personnel Tesoro, Humphrey, Doyle & McPherson who responded to medical alarm, CPR & rescue breathing continue while I/m Ryan taken off floor - CPL Sullivan 328
1515-20 Patrol A+B — Appears Secure — c/o Vogt 2841
1530-35 Patrol A+B — I/m's Locked In — c/o Vogt 2841
1540 Transfer Count: A-(3) B-(14) c/o Vogt 2841

0500 patrol C+D
0515 [illegible]
0515 patrol C+D
0530 patrol C+D all quiet
0545 PATROL, Coffee dispersed
[illegible] patrol all normal
0615 Father and Counts C 19 D
/ Cr. B [illegible] 250
0630 Officer punch activated
/ supervisor [illegible]
/ Clean up, now in progress
0640 patrol completed, [illegible]
/ at this time
0700 patrol C+D all quiet
0710 Count picked up at this
/ Count C (11) + (8 CT) D (8
/ (4 CD)
0715 patrol all normal
0730 PATROL all quiet
Count C (11) + (8 CT) D (8) +
/ [illegible]
0745-47 Patrol C+D - Quiet

1. Date: Friday February 24, 2012
2. Housing Unit/Post: B2 C+D
3. Tour of Duty: 0800 + 1600
4. Staff Member Assigned: [illegible]
5. No. of Keys: (5) [illegible]
6. Body Alarm:
7. Previous Tour Entries Reviewed and Security Inspection P[illegible]

0800-02 Patrol C+D - Quiet
0815-17 Patrol C+D - Quiet
0830-32 Patrol C+D - Quiet
0845-47 Patrol C+D - Quiet

TOUR CHANGE COUNT A 4+1 ct 5 B 13+4 ct 17 C 11+8 ct 19 D 8+4 ct 12

TAKEN BY Cpl. B[illegible] #250 / [illegible]
DATE: 2-24-12 TOUR: 0800-1600 DAY: Friday
ON DUTY: CPL. Bohner #250
ON DUTY c/o Vogt 2942 c/o Vogt 2941
ON DUTY c/o Groba 3009 c/o Brown 530
FIRE CONTROL SYSTEMS CONDITION N/A S.O.P. CPU
EMERGENCY EVACUATION PLAN LOCATION OFFICE RADIO(S) 1
CHARGER(S) 5 BATTERIES 6 CELL CRANK 1 RAZORS 100
FIRE EXTINGUISHERS 4 CONDITION Appr ok LANTERN(S) 2
ALL LOCKING DEVICES IN WORKING ORDER: YES NO ✓ NO. OF KEYS 28
RESUSCITATOR CONDITION Appr ok BODY ALARM(S) 2 911 TOOL 1
CUFFS 3 SHACKLES 3 SEARCH TOOL 1 SCANNER 2 CAMCORDER N/A
O.C. MK4 5 O.C.MK4 0
SERVING UTEN. 2 NAIL CLIPPERS 1 HAIR CLIPPERS 1 DECON. SPRAY 2 HEADS 1
PREVIOUS TOUR ENTRIES REVIEWED Cpl. B[illegible] #250 c/o V#2942/V#2941

Razors #90 new 10 used

OC #s 2044826 Cpl. B[illegible] #250
2044839
2044843 c/o Vogt 2941
2044863 c/o Groba 3009
2067118

0800 Post secure Sgt [illegible] 104

0825 c/o [redacted] and Dr. [redacted] on post — c/o [redacted]

0928 c/o [redacted] and Dr. [redacted] off post — c/o [redacted]

0944 Nurse [redacted] on post — c/o [redacted]

1004 Nurse [redacted] off post — c/o [redacted]

1005 (1) Discharge out C-Block new count A (4) + (1) ct B (13) + (4) ct C (11) + (7) ct D (8) + (4) ct — c/o [redacted]

1043 M/M [redacted] on post — c/o [redacted]

1045 Supervisory Patrol Count A 4+1 ct 5 B 13+4 ct 17 C 11+7 ct 18 D 8+4 ct 12 Cpl. B[illegible] #250

1055 c/o [redacted] # [redacted] off post to retrieve food cart Cpl. B[illegible] #250

1104 c/o [redacted] on post w/ food cart — c/o [redacted]

1104 Tray count (60) hard cold meal — c/o [redacted]

1105 c/o [redacted] on post for (4) meal reliefs — c/o [redacted]

1107 Feeding started — c/o [redacted]

1115 Patrol suspended due to feeding in progress

DEFENDANT'S EXHIBIT M
PENGAD 800-631-6989

office punch activated, interior cell inspection
conducted ———————— c/o Vro?

[struck-through / mirror-image reversed printed form text, illegible]

1128   At 0945 hrs Disciplinary report written on
I/m ████ ████ ███ QBAN for
destroying county property and refusing a
direct order #80743. I/m removed from
tier. Maintenance notified ———————— c/o ████

1132   Feeding Complete ———————— c/o ████

1208   ████ office available ████

1211   M/m ████ on post ———— c/o ████

1247   Post secure ———————— Sgt ████

1248   M/m ████ off post ———— c/o ████

1332   ████ on post ———— c/o ████

1340   CPL ████ on post
Reviewed previous tour entries
CPL ████ Relieved

1345   CSW ████ Yes on
post for MP ████

1410   c/o ████ + CSW ████ off post  c/o ████

1414   Cyber Key Exchange Sgt ████

1430   ████ review previous tour

1445   Supervisory patrol Sgt ████
B/M Test #2 CMA act #? ████
Cyb ████

1446   CSW ████ off post — c/o ████



1510 I/m Ryan, Bartholomew 12A002 taken off floor after by correction & medical staff after attempting to hang himself at approx 1502 hrs Lt. Kreutz notified – CA2: Sullivan
1515 Sgt. Kreutz 78 on post regarding 1502 incident I/m Ryan off floor escorted to medical – notifications to be made appropriate reports to follow off post 1522 Sgt Kreutz
1530 Sgt Kreutz 78 on post, [redacted]
1600 [redacted]
1605 [redacted] on post –
... Killeen, Sgt Grabba, M. Voot & Sgt R Voot relieved from floor – CA2 Sullivan Sgt Brown relieved [redacted]
1615 c/o's Garcia and Hudder on post with NCPD officer Dockswell #1414 — [redacted]
1620 Count ... [redacted]
1640 All floor log books taken off floor by [redacted]



0745 Tour change Count (=4+1 AT=5 Total) [redacted]

1. Date: 2/24/12
2. Housing Unit/Post: B2A
3. Tour of Duty: 0800-1600
4. Staff Member Assigned: [illegible]
5. No. of Keys: [illegible]
6. Body Alarm: [illegible]
7. Previous Tour Entries Reviewed and Security Inspection Performed: [signature]
(Signature)

0800 R.L.I I/M's in cells, All secure [redacted]
0815 R.L.I Quiet [signature]
0830 R.L.I - [redacted]
0845 R.L.I - [redacted]
0900 R.L.I - Appears Secure [redacted]
0915 R.L.I - [redacted]
0930 R.L.I I/M's on Tier [redacted]
0945 At this time I/M [redacted] locked in B2A [illegible] cell was witnessed breaking the TV locked on A Tier. The tier was locked in on TV Removed from A Tier. All pieces broken have been secured at this time. [illegible] reports written - [signature]
1000 R.L.I - [redacted]
1015 R.L.I - [redacted]
1030 R.L.I - Appears S[redacted]
1045 R.L.I - [redacted]
1100 R.L.I + Count (4) + (1) AT (5) [redacted]
1115 R.L.I Feeding in Progress [redacted]
1130 R.L.I Feeding in Progress [redacted]
1145 R.L.I - [signature] [redacted]
1200 R.L.I - Quiet [redacted]
1215 R.L.I - [redacted]
1230 R.L.I - Appears Secure [redacted]

DEFENDANT'S EXHIBIT N
PENGAD 800-631-6989

1/24/12 Continued

1245 PCL 1 - [illegible]
1300 PCL 1 - Appears Same [illegible]
1315 PCL 1 - Out [illegible]
1330 PCL 1 Out [illegible]
1345 PCL 1 - [illegible]
1400 PCL 1 - Normal [illegible]
1415 PCL 1 [illegible]
1430 PCL 1 - [illegible]
1445 Patrol A block - [illegible] lying on bunks quiet [illegible]
1500 Patrol A block - [illegible] lying on bunks quiet [illegible]
1515 PCL 1 - [illegible] removed off floor by medical personnel to Medical; Tier locked down at this time - [illegible]
1530 PCL 1 - [illegible]
1545 PCL 1 - [illegible]
1600 PCL 1 - [illegible]

| NASSAU COUNTY SHERIFF'S DEPARTMENT<br>DIVISION OF CORRECTION<br><br>POST ORDERS | NUMBER: CD-05-00-13<br>SUPERSEDES NUMBER: P.O. 10/89 5/9/89<br>EFFECTIVE DATE: December 2, 1991 |
|---|---|
| SUBJECT:<br>B BUILDING 2ND FLOOR | PAGE 1 OF 7 PAGES |
| AUTHORITY:<br><br>/s/ J. Jablonsky<br>Sheriff | DISTRIBUTION: Sheriff, All Capts All Lts., Dir. DeJulio, B-Bldg. Sgts., 1/Cs, IAU, Training, CSEA<br>ISSUED BY:<br>/s/ J. Britt<br>Captain |
| REFERENCES: ACA No. #2-5164,65,66,67, and #2-5168, 2-5170, Post Order 10-89 (5-9-89) | CONTROL NO: 0045N<br>NYSCOC NO: 7003.1,7003.2 |

## OPERATIONAL PROCEDURE FOR THE B BUILDING HOUSING UNITS

**POLICY:**

The purpose of this plan is to provide staff with an operational procedure for the B Building Housing Units. This procedure will be updated and revised as needed. Active Supervision shall be maintained in all Housing Units. At all times observation tiers will be supervised by a staff member continuously patrolling each tier. However, any time inmates are locked in their cells, and there is no double bunking on a tier, the redirection from Active Supervision to General Supervision is permissible at the discretion of the Housing Unit Supervisor. It must be noted in the Post Log Book when it began and ended.

This Standard Operating Procedure will be used in conjunction with any

DEFENDANT'S
EXHIBIT

and all special orders, or memos, specific to this Post and will be accounted for in the Post Log Book.

It is the responsibility of all staff to use common sense and professional judgment regarding any issue which may arise that is not covered herein.

| SUBJECT: Post Order B Building, 2nd Floor | NUMBER CD-05-00-13 | EFFECTIVE DATE 12-2-91 | PAGE 2 of 7 |
|---|---|---|---|

DEFINITIONS:

GENERAL SUPERVISION shall mean the availability to inmates of facility staff responsible for the care and custody of such inmates which shall include supervisory visits conducted at thirty (30) minute intervals.

ACTIVE SUPERVISION shall mean the immediate availability to inmates of facility staff responsible for the care and custody of such inmates which shall include:

    a.  uninterrupted ability to communicate orally with and respond to each inmate unaided by any electronic or other artificial amplifying device; and

    b.  the conducting of supervisory visits at fifteen (15) minute intervals;

    c.  the ability of staff to immediately respond to emergency situations.

PROCEDURE:

I.  The operation of this Post will be under the direct supervision of the First Class Correction Officer, or Correction Officer in charge, as designated by the Tour Commander, assigned to the Housing Unit in accordance with SOP CD-05-08-05A.

II.  The following procedures will be followed by all Officers assigned to this Post:

a. All assigned Officers will have his/her name, shield number, tour, and date entered in the Post Log Book upon arrival on the Floor. The Log Book shall be placed in the lock box area.

b. The First Class, or Correction Officer in charge, will review the written records made by the previous tour, initial such written records after the last entry, and notify other staff, assigned to this Post, of information which must be brought to their attention.

c. Inspect and account for all necessary keys, equipment, locks, gates, bars, screens, security windows, all other security devices, and Post Standard Operating Procedures.

| SUBJECT: Post Order B-Bldg. 2nd Floor | NUMBER CD-05-00-13 | EFFECTIVE DATE 12-2-91 | PAGE 3 of 7 |
|---|---|---|---|

III. Inmate Counts will be conducted according to the current Inmate Population Count Standard Operating Procedure CD-05-01-01.

IV. Supervision of Inmates in the Housing Area

a. Safety, security, and sanitary conditions shall be maintained in all inmate housing areas.

b. This Housing Unit has been authorized to be staffed by one (1) 1/C Correction Officer and two (2) Correction Officers for the 0730-1600 and 1530-2400 shifts. For the 2330-0800 shift staffing shall be two (2) Correction Officers. One Correction Officer shall be added per shift for each special Observation Post designated by the Classification & Housing Unit. The 1/C Correction Officer, or Correction Officer in charge, shall assign subordinates to the following Posts:

1. A-POST - Supervisor of Housing Unit, Officers Station, Lobby and/or other duties assigned by 1/C Correction Officer or Correction Officer in charge of Supervision as per Standard Operating Procedure CD-05-08-05A:

The First Class, or Correction Officer in charge, shall comply with all Standard Operating Procedures and supervise the operation of the Floor.

The times assigned to the designated Posts shall be recorded in the appropriate Log Book, as well as recording all appropriate events, i.e., movements, incidents, etc.

At the discretion of the First Class, or Correction Officer in charge, Posts may be rotated in a timely fashion so as not to disrupt the smooth operation of the Housing Unit.

2. B-POST-Lobby Area:

One (1) Officer shall be assigned by the 1/C Correction Officer, or Correction Officer in charge, to constantly patrol the Lobby, controlling access and egress of all Lobby Gates. When necessary for inmate escorts this Officer may be utilized. This Post is not staffed during the 2330-0600 shift.

3. C-POST-Patrol - Non-Observation Tiers

Unless properly relieved, one Officer shall be assigned by the First Class, or Correction Officer in charge, to patrol all non-observation tiers, the lock-box area, and guardwalk.

He/she shall maintain Active Supervision by completing patrols and electrically recording punches every fifteen (15) minutes and documenting in Post Log Book. This will include a personal visual observation of each inmate, cell, and surrounding area. The body alarm shall remain in the possession of the Officer on patrol at all times.

4. D-POST-Observation Post

a. He/she shall remain on the tier and maintain Active Supervision by continuously patrolling and electrically recording punches every fifteen (15) minutes and documenting in Post Log Book. This will include a personal visual observation of each inmate, cell, and surrounding area.

b. Assigned personnel may not absent themselves from their Post for any reason unless properly relieved or by direction of the Tour Commander.

c. Assigned personnel shall be responsible for reporting to their Supervisor any unusual occurrences, changes in behavior patterns or other information which may affect the security of the tier or the welfare of inmates confined.

d. All significant information reported shall be neatly and accurately recorded in the Mental Observation Tier Log Book provided. All entries made shall include the signature of the recording Officer.

5. E-POST-Any Additional Observation Post

a. He/she shall remain on the tier and maintain Active Supervision by continuously patrolling and electrically recording punches every fifteen (15) minutes and documenting in Post Log Book. This will include a personal visual observation of each inmate, cell, and surrounding area.

b. Assigned personnel may not absent themselves from their Post for any reason unless properly relieved or by direction of the Tour Commander.

c. Assigned personnel shall be responsible for reporting

to their Supervisor any unusual occurrences, changes
in behavior patterns or other information which may
affect the security of the tier or the welfare of
inmates confined.

d. All significant information reported shall be neatly
and accurately recorded in the Mental Observation
Tier Log Book provided.  All entries made shall include
the signature of the recording Officer.

V.  Maintaining Security

a. All security gates, doors, and lock boxes will be closed
and locked at all times except when being utilized for
controlled and authorized access.  All observation guardwalk
gates are to remain open unless inmates are in the lock-box
area.  Prior to allowing inmates into the lock-box area
all guardwalk gates are to be locked.

b. When conducting security patrols, Officers will be constantly
alert and observing for fire hazards, threats to security
and those individual or group attitudes or actions
detrimental to the safety, security and good order of the
Correctional Center. The 1/C Correction Officer, or
Correction Officer in charge, shall be promptly apprised of
any unusual or unsafe incident, situation, or condition.

c. Inmate feeding shall be according to the current CD-05-08-03.
Constant supervision and close observation shall be
maintained during inmate meal periods with strict attention
to health standards, equal and fair portions, clean up after
meal periods and count of all utensils and equipment.
Officers assigned to Observation Posts shall supervise the
feeding of their tier.

d. Inmates shall not be permitted on guardwalks, in lock-box
areas, lobbies, offices or other unauthorized areas unless
under direct visual supervision of an Officer.

e. When it is necessary for three or more inmates to be outside a floor lobby gate, or for that gate to remain open for any reason while inmates have access to it, one (1) Officer shall remain locked in the Floor Officer Station and maintain possession of all keys necessary for egress from the floor.

f. If it is necessary to open and enter an inmate's cell, in which an inmate is locked in, a minimum of two (2) Officers shall enter the cell. However, if a Correction Officer evaluates that a life threatening emergency exists one (1) Correction Officer can take appropriate steps to preserve life. Security shall be maintained at the tier lock-box and in the Floor Lobby. Authorization shall be obtained from the Building Sergeant prior to entering a cell, unless an emergency occurs, at which time the Building Sergeant will be notified as soon as practicable.

VI. Inmate Movements

a. When it is necessary for inmates to move unescorted through the Correctional Center, it shall be the responsibility of the staff member at the inmate's departure point to issue an Inmate Travel Authorization pass (JL-2667) for the required destination and conduct a pat search of the inmate. The inmate's name, location and departure time will also be documented on the Daily Activity Sheet (JL-2020) as he/she departs the housing area. Similarly, the inmate's return to the Housing Unit will be documented.

b. The 1/C, or Correction Officer in charge, shall coordinate movement on the stairwells with the North Lobby Officer to ensure no co-mingling of male and female inmates.

c. Only female inmates, housed on B2, shall be escorted to "A" Building via the A2-B2 corridor.

d. Inmates who are placed in observation, protective custody, administrative segregation, are suicidal, escape risks, present a threat to other inmates or to the security of the Correctional Center shall not be permitted to move unescorted through the Correctional Center.

e. Group or mass movements of more than three (3) inmates shall not be initiated until clearance has been obtained for the destination and all lobbys and areas en route.

| SUBJECT:Post Order B-Bldg, 2nd. Floor | NUMBER CD-05-00-13 | EFFECTIVE DATE 12-2-91 | PAGE 7 of 7 |
|---|---|---|---|

f. The gates and doors required for group movements shall be unlocked and the keys in possession of an Officer who will be secured in the appropriate station prior to the initiation of the movement.

g. In any movement, an accurate count of the inmates shall be conducted and recorded at the time of departure and return. This count will be verified each time with the escorting Officers.

f. When an inmate is to leave the original destination he was sent to from the housing area, (to go to another destination other than his housing area) the housing area shall be promptly notified so that the accountability of inmates can be maintained.

g. Until any mass movement is complete, one (1) Officer shall be secured in the appropriate station until the movement returns to its housing unit.

VII. Evacuation

a. In the event of an emergency requiring evacuation, evacuation will be via the fire emergency plan for the Post.

b. A count of all inmates will be conducted immediately thereafter and the First Class Officer, or Correction Officer in charge, shall ascertain the location of any



inmate not actually present.

Post Order 10-89 5/9/89