# EXHIBIT "B"

# Francisco J. Diaz, MD FCAP

Anatomic and Forensic Pathology Consultant, LLC

82 I St. SE #502

Washington, DC. 20003

(734) 620-1774

autopsyandpathreview@gmail.com

March 5, 2018

Parker Waichman, LLP
Port Washington, NY
Nicholas Warywoda, Esq.

**RE: Ryan, Bartholomew**
**Your file: 2008148**
**Our file: 1568**

Dear attorney Warywoda:

You have retained me as an expert and consultant in forensic pathology for the above referenced case. I have reviewed records and documents pertaining to the death of Mr. Ryan who was pronounced dead in the State of New York on the 24th of February of the year 2012. You have further requested that I write an opinion letter stating my credentials and giving my expert opinion as the cause and mechanism of death.

### Credentials

I am a practicing medical examiner (forensic pathologist) in the District of Columbia. I have been in practice for nearly 20 years. As such I have performed 9000 post-mortem examinations and testified in circuit court in approximately 400 occasions. I have also provided testimony in depositions in excess of 100 times. I finished training in forensic pathology at the office of the chief medical examiner in the city and county of Philadelphia, PA in affiliation with the Medical College of Pennsylvania (now Drexel) from 1999-2001. Before that I trained in anatomic pathology at Conemaugh Memorial hospital in affiliation with Temple University in the city of Johnstown, PA. I attended medical school in my native country,
Dominican Republic where I obtained MD degree and went unto pursuing training in the U.S. after being certified by the educational commission for foreign medical graduates

**Opinion letter of Francisco J. Diaz, MD FCAP**                                      Page 2 of 4
**Ryan, Bartholomew**

(ECFMG). I am certified by the American Board of Pathology in Anatomic and Forensic pathology. From January 2012-2017 I held a faculty appointment with the University of Michigan School of medicine. As of July 2017 I hold a faculty appointment at George Washington university school of medicine. I have active licenses in the District of Columbia, Michigan, Ohio and Pennsylvania.
I have published numerous original articles in peer reviewed journals and presented in local, regional, national and international conferences. My curriculum vita is attached.

### Records Reviewed

- -Autopsy report, Nassau County Medical Examiner's office.
- -Toxicology report, Nassau County Medical Examiner's office.
- - Autopsy photographs (26), Nassau County Medical Examiner's office.
- -Medical records, Armor correctional medical services of New York.
- -Deposition, Thomas Killeen
- -Deposition, Robert Vogt
- -Expert report, Mark Taff, MD

### Summary and Opinion

Mr. Ryan was a thirty-two-year-old male who was found hanging inside a cell in a correctional facility in the State of New York. He used bed sheet and he tied three knots. Mr. Ryan was found Partially suspended. The following day (02/25/2012) a complete autopsy was performed at the Nassau County office of the Medical Examiner. The most salient findings of that examination were: linear ecchymotic hemorrhage of the skin at the level of the anterior mid-neck and small intramuscular hemorrhage of the left thyroid muscle.
Hanging as a cause of death is a vascular phenomenon. What happens is that when a ligature encircles the neck the blood vessels on the sides of the neck collapse. There are two types of blood vessels on the sides of the neck: 1) carotid arteries, which its main function is to carry oxygen to the brain. 2) Jugular veins, which its main function is to carry un-oxygenated blood back to the heart. Hanging can be achieved by the weight of the head alone, hence a person can hang him/herself from a door knob.
The difference in the types of hangings comes as a function if the vessels are collapsed at the

**Opinion letter of Francisco J. Diaz, MD FCAP**  Page 3 of 4
**Ryan, Bartholomew**

same time of if there is still some residual circulation. For example, in a complete suspension hanging the ligature will encircle the neck precluding blood from getting in to the head but also precluding blood from getting out. In that setting there is suffusion and congestion of the head and consciousness is lost between 13-16 seconds.
The case of Mr. Ryan differs from the above because he was partially suspended, therefore some blood could get in to the head and some blood could get out. The post-mortem examination disclosed accumulation of blood on the left thyroid muscle indicating that the ligature exerted more pressure on the left side. Mr. Ryan did not have suffusion of the head indicating that the blood vessels were neither completely nor continuously collapsed. It is noteworthy that on autopsy he was found to have pulmonary edema with each lung weighing double the average. The significant pulmonary edema indicates a period of survival as fluid needs time to accumulate in the lungs.

I respectfully disagree with the opinion of Dr. Taff that Mr. Ryan's death was "near instantaneous/rapid." As discussed above it took a period of time for Mr. Ryan to lose consciousness and then die. A near instantaneous death/rapid means a very few seconds.

I also respectfully disagree with Dr. Taff assertion that the ligature around the neck of Mr. Ryan constricted the airway. Ligature hanging collapses the blood vessels of the neck and partial suspension allows for some blood to get in and out.

Lastly, I respectfully disagree with Dr. Taff in his opinion that a hypertensive patient with coronary artery disease will die quicker when hanging. Mr. Ryan was thirty-two years old and his underlying conditions where not terminal and did not contribute to neither the cause nor the mechanism of death and they do not constitute an adjuvant to expedite death. Dr. Taff opined that because of Mr. Ryan's "chronic use of opiates, alcohol and marijuana his threshold for sensing physical pain was most likely altered and over the years he developed some tolerance against increasing levels of physical pain". Said statement is, in my opinion, erroneous as the physical sensation of pain is individual and substance use/abuse does not make patients impervious to pain or blunt their physical sensation of pain.
In that context, it is my opinion that Mr. Ryan died of hanging as a result of a partial suspension with a ligature fashioned with bed sheet. It is also my opinion, based on the mechanism of hanging that he was cognizant of his predicament for 2-3 minutes, losing consciousness after that period and then dying as a result of oxygen deprivation to the brain.

**Opinion letter of Francisco J. Diaz, MD FCAP**  Page 4 of 4
**Ryan, Bartholomew**

All the opinions proffered by me are based on my education; training and experience are with a reasonable degree of medical certainty. I reserved the right to modify the opinions if new information arises.

Cordially,

*[signature]*

Francisco J. Diaz, MD FCAP